IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
Case No. 16 cv 107

| | |
|---|---|
| LANTERN BUSINESS CREDIT, LLC, a Delaware limited liability company,<br><br>    Plaintiff,<br><br>    v.<br><br>ALIANZA TRINITY DEVELOPMENT GROUP LLC., a Florida limited liability company, ALIANZA TRINITY HOLDINGS LLC, a Florida limited liability company, BRIGHT'S CREEK GOLF CLUB, LLC, a North Carolina limited liability company, PASQUALE GIORDANO, and OMAR BOTERO,<br><br>    Defendants. | **COMPLAINT** |

Plaintiff Lantern Business Credit, LLC, through counsel and pursuant to Rule 7 of the Federal Rules of Civil Procedure, complains of Defendants as follows:

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Lantern Business Credit, LLC ("Lantern") is a Delaware limited liability company whose members are citizens of Delaware, Texas, and the Cayman Islands for purposes of federal diversity jurisdiction.

2. Defendant Alianza Trinity Development Group LLC. ("Alianza Development") is a Florida limited liability company, whose members are citizens of Florida, North Carolina, and the nation of Columbia, South America, for purposes of federal diversity jurisdiction.

3. Defendant Bright's Creek Golf Club, LLC (the "Golf Club") is a North Carolina limited liability company, whose members are citizens of Florida, North Carolina, and the nation of Columbia, South America, for purposes of federal diversity jurisdiction.

4. Defendant Alianza Trinity Holdings LLC ("Alianza Holdings") is a Florida limited liability company, whose members are citizens of Florida and North Carolina for purposes of federal diversity jurisdiction.

5. Defendant Pasquale Giordano ("Mr. Giordano") is a citizen and resident of Miami, Florida.

6. Defendant Omar Botero ("Mr. Botero") is a citizen and resident of Miami, Florida.

## JURISDICTION AND VENUE

7. Defendants are involved in the development and operation of a golf resort in Polk County, North Carolina, within the territorial limits of the Western District of North Carolina.

8. The Court has personal jurisdiction over Defendants because they have the required minimum contacts with North Carolina.

9. The Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) because Lantern's citizenship for federal diversity purposes differs from all of Defendants' citizenships for diversity purposes and because the amount in controversy, as alleged more particularly below, exceeds $75,000.

10. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of Defendants' acts and omissions giving rise to Lantern's claims against them arose in Polk County, North Carolina, and because a substantial part of the property that is the subject of this civil action is located in Polk County, North Carolina.

## FACTUAL ALLEGATIONS

11. "Bright's Creek" is a residential subdivision and sports and recreation resort located in Mill Spring, Polk County, North Carolina. Bright's Creek offers a variety of golf and

other sports and leisure amenities to residents, members, and guests, and sells real property to retail purchasers for residential development.

12. Alianza Development is the record owner of a number of residential lots, a condominium unit, an unfinished condominium building, and undeveloped land in Bright's Creek. Alianza Development also owns tangible and intangible personal property, including without limitation fixtures, contracts, and other personal property.

13. The Golf Club owns tangible and intangible personal property, including without limitation accounts, contracts, and other personal property associated with the operation and maintenance of the golf club and related facilities at Bright's Creek.

14. Effective 10 July 2015, Lantern refinanced Alianza Development's existing debt for Bright's Creek. At the time of the loan transaction (the "Loan"), the existing lender had already commenced foreclosure proceedings as a result of the Defendants' defaults of that lender's loan documents. As a result of the Loan, the existing lender dismissed the foreclosure.

15. The Loan provided financial accommodations in an original aggregate principal amount of $10.8 million (the "Loan"), to be disbursed in two "stages." Stage I funding of $5.75 million retired the existing lender's debt, paid various trade and other creditors of the Defendants, and provided Alianza Development and the Golf Club (collectively, the "Debtors") with $173,669.57 to provide resources for the Debtors to market residential lots in Bright's Creek and to operate Bright's Creek.

16. Stage II funding disbursed the remaining proceeds of the Loan to the Debtors, including amounts disbursed to further support the development, marketing, and sale of residential lots in Bright's Creek and the operation of Bright's Creek and its various amenities,

and amounts disbursed to reserve accounts to fund specific development activities and to pay debt service on the Loan.

17. The parties contemplated that Debtors would use the proceeds allocated to the development reserve to complete construction of the "The Villas at Bright's Creek Lodge Condominiums" and to construct and develop a clubhouse and related sports and recreation facilities and amenities (the "Swim & Fitness Center") previously promised to Bright's Creek members and residents (collectively, the "Project Construction").

18. Interest payments on the Loan were made by the Debtors from amounts deposited in the interest reserve account (the "Interest Reserve") established in conjunction with the Stage II funding.

19. Rather than scheduled principal payments, the Loan is structured such that principal is to be repaid through the application of proceeds from the sale of residential lots in Bright's Creek and the sale of club memberships in Bright's Creek by the Debtors (the "Sale Proceeds Payments").

20. To facilitate the completion of the Project Construction, the development of Bright's Creek and its amenities, and to further facilitate sales of residential lots in Bright's Creek and sales of club memberships in the Golf Club to the generate amounts to be paid as Sale Proceeds Payments, the Loan Agreement provides that Lantern is to make available to the Debtors disbursements from amounts deposited in the reserve account established in conjunction with the Stage II funding (the "Development Reserve") for the payment and reimbursement of costs and expenses related to the Project Construction ("Development Costs").

21. To document the Loan transaction, Defendants and Lantern entered into various loan documents, including without limitation the following:

4

(a) to govern the lending relationship among them, the Debtors entered into a Loan Agreement dated 10 July 2015 (the "Loan Agreement") with Lantern;

(b) to evidence their indebtedness to Lantern, Debtors executed a Promissory Note dated 10 July 2015 (the "Note") in favor of Lantern in the amount of $10,800,000;

(c) to secure repayment of the Note, Alianza Development executed a Deed of Trust, Assignment of Rents and Leases, Collateral Assignment of Property Agreements, Security Agreement and Fixture Filing dated July 2015 (the "Deed of Trust"), which was duly recorded at 12:40:46 PM on 13 July 2015 in the Polk County, North Carolina, public registry, Book 413, Page 2264;

(d) to secure repayment of the Note, Debtors executed a Security Agreement dated 10 July 2015 (the "Security Agreement"); and

(e) to guaranty repayment of the Note and the completion of the Project Construction, among other obligations of Debtors, Alianza Holdings, Mr. Botero, and Mr. Giordano (the "Guarantors") executed a Guaranty and Security Agreement dated 10 July 2015 (the "Guaranty") in favor of Lantern, which includes a grant of a security interest by Alianza Holdings in all assets of Alianza Holdings to secure the payment of the guaranteed obligations by the Guarantors.

22. An accurate copy of the Loan Agreement is attached as Exhibit 1.

23. An accurate copy of the Note is attached as Exhibit 2.

24. An accurate copy of the Stage I sources and uses reflecting the disbursements to be made with the Stage I funding is attached as Exhibit 3.

25. An accurate copy of the Stage II sources and uses reflecting the disbursements to be made with the Stage II funding is attached as Exhibit 4.

26. An accurate copy of the recorded Deed of Trust is attached as Exhibit 5.

27. An accurate copy of the Security Agreement is attached as Exhibit 6.

28. An accurate copy of the Guaranty is attached as Exhibit 7.

29. To further facilitate making the financial accommodations available to the Debtors and to allow Alianza Development to preempt the foreclosure proceedings pending

against Bright's Creek by refinancing of its existing lender, the Debtors and Lantern entered into a Post-Closing Agreement dated 10 July 2015 (the "Post-Closing Agreement") memorializing certain post-closing obligations that the Debtors would not be able to satisfy prior to closing that the Debtors would be required to perform with respect to the commencement of construction and development activities at Bright's Creek, the development of additional amenities, and the preservation and protection of Lantern's Collateral.

30. An accurate copy of the Post-Closing Agreement is attached as <u>Exhibit 8</u>.

31. The Post-Closing Agreement required Debtors to enter into a Club Management Agreement dated 10 August 2015 (the "Management Agreement") with East West Partners Club Management Company, Inc. (the "Management Company").

32. Debtors, Lantern, and the Management Company executed an Assignment, Consent and Agreement of Manager and Subordination of Management Agreement dated 10 September 2015 (the "Assignment of Management Agreement") under which Debtors collaterally assigned the Management Agreement to Lantern to secure repayment of the Note.

33. Accurate copies of the Assignment of Management Agreement and the Management Agreement (itself attached as an exhibit to the Assignment of Management Agreement) are attached as <u>Exhibit 9</u>.

34. Among various post-closing obligations with which the Debtors did not comply, the Post-Closing Agreement required Debtors to deliver to Lantern on or before 8 October 2015 a payment and completion bond from the contractor hired to construct the Swim & Fitness Center relating to the completion of the Swim & Fitness Center, in form and substance satisfactory to Lantern showing Lantern as a "dual obligee" on the riders thereunder (the "Completion Bonds").

35. Debtors have not delivered the Completion Bonds to Lantern, resulting in an Event of Default under Section 7.1(i) of the Loan Agreement.

36. Additionally, the Post-Closing Agreement required Debtors to deliver to Lantern (a) on or before 8 October 2015, evidence that a surveyor licensed in the State of North Carolina and satisfactory to Lantern had commenced work on a survey of the "Surveyed Property" (as such term is defined in the Post-Closing Agreement), (b) on or before 5 February 2016, a survey of the Surveyed Property prepared by a surveyor licensed in the State of North Carolina and satisfactory to Lantern, and (c) on or before 7 March 2016, an updated loan title policy including, without limitation, the endorsements specified in the Post-Closing Agreement (collectively, the requirements specified above, the "Survey and Title Obligations").

37. Debtors have not satisfied the Survey and Title Obligations, in violation of the terms and provisions of the Post-Closing Agreement, resulting in an Event of Default under Section 7.1(i) of the Loan Agreement with respect to the requirements to commence work on a survey of the Surveyed Property and the requirement to deliver the completed survey of the Surveyed Property.

38. Upon information and belief, as of 13 August 2015, Alianza Development delivered to Sunwood Inc., a Florida corporation, a Deed In Lieu of Foreclosure, recorded as of 14 October 2015, in the Polk County, North Carolina public registry at Book 415, Page 1292, as consideration for the cancellation of a deed of trust benefiting Sunwood Inc. (the "Sunwood Deed of Trust") to secure indebtedness evidenced by a Promissory Note, dated as of 17 March 2015, in the original principal amount of $405,000 (the "Sunwood Debt").

39. Pursuant to Section 4.11 of the Loan Agreement, the Debtors represented to Lantern that upon the payment of the "Existing Debt" described on Schedule F to the Loan

7

Agreement, the Debtors would not have any outstanding "Debt" other than "Permitted Debt" (as such term is defined in the Loan Agreement).

40. Defendants did not disclose to Lantern the existence of the Sunwood Debt or the Sunwood Deed of Trust, either on Schedule F to the Loan Agreement or otherwise, resulting in an Event of Default under Section 7.1(b) of the Loan Agreement with respect to any representation made by a Defendant being false or misleading in any material respect as of the effective date of the Loan Agreement (the date upon which such representation regarding the existence of any outstanding Debt other than "Existing Debt" disclosed on Schedule F was made).

41. Upon information and belief, the Debtors were obligated with respect to the Sunwood Debt in violation of Section 6.4 of the Loan Agreement, resulting in an Event of Default under Section 7.1(h) of the Loan Agreement.

42. To facilitate Lantern's monitoring of the operations and performance of Bright's Creek and the financial performance and viability of the Debtors, the Loan Agreement requires Debtors to deliver certain monthly financial statements and other deliverables to Lantern. Beginning with the August, 2016 financial reporting due September 30th and each month thereafter, the Debtors failed to deliver timely the required financial statements and related deliverables, and when subsequently received, the correspondence from Debtors frequently included caveats that they were in "draft" form or "incorrect." As of 22 April 2016, Lantern has not received finalized monthly financial statements or related deliverables for the months December 2015, January 2016 or February 2016. All of the foregoing evidences breaches of the Debtors' obligations pursuant to Section 5.12 and Section 5.13 of the Loan Agreement, resulting in an Event of Default under Section 7.1(i) of the Loan Agreement.

43. The Debtors have permitted the existence of additional liens and encumbrances on the Collateral (collectively, the "Un-Permitted Liens") in violation of Section 6.1 of the Loan Agreement, resulting in Events of Default under Section 7.1(i) of the Loan Agreement.

44. As of 22 April 2016, Golf Club and Alianza Development (individually or collectively) have not provided Lantern with sufficient evidence that the Un-Permitted Liens have been terminated or otherwise released.

45. Upon information and belief, the Debtors have incurred additional indebtedness that is not "Permitted Debt" (as such term is defined in the Loan Agreement) (the "Un-Permitted Debt") in violation of Section 6.4 of the Loan Agreement, resulting in Events of Default under Section 7.1(h) of the Loan Agreement.

46. Upon information and belief, Debtors (individually or collectively) lack the resources to pay the obligations arising with respect to the Un-Permitted Debt and to discharge and release liens or encumbrances resulting such obligations.

47. On 5 November 2015, Lantern delivered to the Defendants notice that the Debtors had failed to satisfy certain requirements under the Loan Agreement and the Post-Closing Agreement, together with notice that Lantern was reserving its rights with respect to any Events of Default with respect to those failures by the Debtors (the "First Reservation Letter"). An accurate copy of the First Reservation Letter is attached as Exhibit 10.

48. To facilitate Lantern's monitoring of the operations and performance of Bright's Creek and the financial performance and viability of the Debtors, on or before thirty (30) days before the start of each fiscal year, the Loan Agreement requires Debtors to deliver to Lantern a projected capital and operating expenditure budget for the operations of Bright's Creek and the Debtors for the succeeding fiscal year (the "Projections").

49. Debtors failed to deliver to Lantern the Projections for fiscal year 2016 on or before 1 December 2015, in violation of Section 5.16(a) of the Loan Agreement, resulting in an Event of Default under Section 7.1(i) of the Loan Agreement.

50. On 10 December 2015, Lantern delivered to the Defendants notice that the Debtors had failed to satisfy certain requirements under the Loan Agreement with respect to Un-Permitted Liens the Debtors allowed to be placed on the Collateral, together with notice that Lantern was reserving its rights with respect to those failures by the Debtors (the "Second Reservation Letter"). An accurate copy of the Second Reservation Letter is attached as Exhibit 11.

51. During December 2015 and January 2016, in response to Lantern's inquiries regarding the Events of Default that had occurred and continue, Defendants communicated to Lantern concerns about Debtors' liquidity. Debtors informed Lantern that they had located an investor that would recapitalize Bright's Creek and payoff Lantern's Loan in full. The Debtors requested that Lantern release funds from the Development Reserve so that Debtors could continue to operate Bright's Creek (funds that were designated under the Loan Agreement to be used for "Development Costs" that Debtors had no access at the time as a result of the Debtors' inability to sell any lots or memberships).

52. Effective 3 February 2016, the parties amended the Loan Agreement by executing a First Amendment to Loan Agreement (the "First Amendment"). An accurate copy of the First Amendment is attached as Exhibit 12.

53. In connection with execution of the First Amendment, the Defendants assured Lantern that Debtors intended to prepay the Loan in full on or before 29 February 2016 (the "Proposed Refinancing").

10

54. In anticipation of the Proposed Refinancing, the Defendants requested that Lantern make certain non-standard disbursements from the Development Reserve in an amount not to exceed $250,000 as an accommodation to Debtors to allow Debtors to pay specified unpaid operating expenses necessary for the continued operations of the Debtors and Bright's Creek rather than for the payment of Development Costs for which the amounts deposited in the Development Reserve were intended (the "Non-Construction Disbursements").

55. In reliance on assurances by the Defendants with respect to the Proposed Refinancing, and pursuant to the terms and provisions of the First Amendment, Lantern accommodated the Defendants' request and made available amounts in the Development Reserve for Non-Construction Disbursements to support the ongoing operations of the Debtors and Bright's Creek.

56. On 3 February 2016, Lantern delivered to the Defendants notice that the Debtors had failed to satisfy certain requirements under the Loan Agreement and the Post-Closing Agreement, together with notice that Lantern was reserving its rights with respect to any Events of Default with respect to those failures by the Debtors (the "Third Reservation Letter"). An accurate copy of the Third Reservation Letter is attached as Exhibit 13.

57. Effective 18 February 2016, the parties amended the Loan Agreement again by executing a Second Amendment to Loan Agreement (the "Second Amendment"). An accurate copy of the Second Amendment is attached as Exhibit 14.

58. Before execution of the Second Amendment, the Defendants again assured Lantern that the Debtors intended to consummate the Proposed Refinancing on or before 29 February 2016.

59. In anticipation of the Proposed Refinancing, the Defendants requested that Lantern make additional Non-Construction Disbursements from the Development Reserve in the amount of $250,000 (raising the aggregate amount to $500,000) as an additional accommodation to Debtors to allow Debtors to make payroll and pay additional specified unpaid operating expenses necessary for the continued operations of the Debtors and Bright's Creek.

60. In reliance on the repeated assurances by the Defendants with respect to the Proposed Refinancing, and pursuant to the terms and provisions of the Second Amendment, Lantern again accommodated the Defendants' request and made available additional amounts in the Development Reserve for additional Non-Construction Disbursements to support the ongoing operations of the Debtors and Bright's Creek.

61. The Proposed Refinancing did not occur on or before 29 February 2016.

62. Effective 4 March 2016, the parties amended executed a Third Amendment of Loan Agreement and Forbearance Agreement (the "Forbearance Agreement"). An accurate copy of the Forbearance Agreement is attached as Exhibit 15.

63. Before execution of the Forbearance Agreement, the Defendants represented that they needed additional time to close the Proposed Refinancing. They assured Lantern that the Debtors would consummate the Proposed Refinancing on or before 18 March 2016.

64. In anticipation of the Proposed Refinancing, the Defendants requested that Lantern make a Non-Construction Disbursement from the Development Reserve in the amount of $150,000 (increasing the total aggregate amount to $650,000) as an additional accommodation to Debtors to allow Debtors to make payroll and pay additional specified unpaid operating expenses necessary for the continued operations of the Debtors and Bright's Creek.

12

65. In conjunction with the execution of the Forbearance Agreement and the consummation of the additional Non-Construction Disbursements permitted thereunder, the Debtors acknowledged the occurrence and continued existence of the "Existing Events of Default" specified therein, and that due to the Existing Events of Default, Lantern had full legal right as of the date of such Forbearance Agreement to exercise its rights and remedies under the Loan Agreement, the Guaranty and the other Loan Documents.

66. In reliance on the repeated assurances of the Defendants that the Proposed Refinancing would occur and on the Debtors' acknowledgment in the Forbearance Agreement with respect to the Existing Events of Default, and pursuant to the terms and provisions of the Forbearance Amendment, Lantern again accommodated the Defendants' requests and made available additional amounts in the Development Reserve for additional Non-Construction Disbursements to support the ongoing operations of the Debtors and Bright's Creek.

67. Under the Forbearance Agreement, Lantern agreed to forbear exercising certain rights and remedies with respect to the Existing Events of Default until after 25 March 2016. The Forbearance Period expired in accordance with its terms on March 25, 2016.

68. Upon information and belief, Alianza Development has not paid 2015 property taxes owing on those portions of Bright's Creek it owns, with aggregate accrued and unpaid taxes equaling $212,515.67 as of March 22, 2016 (the "Unpaid Property Taxes"), in violation of Sections 5.3 and 5.4 of the Loan Agreement, resulting in Events of Default under Section 7.1(i) of the Loan Agreement.

69. Upon information and belief, Golf Club and Alianza Development (individually or collectively) lack the resources to pay the Unpaid Property Taxes.

70. On 21 March 2016, the Management Company delivered a letter to the Golf Club (the "Management Default Letter") notifying Golf Club that Golf Club was in default of various provisions of the Management Agreement by failing to pay management fees and by consistently failing to fund essential operating expenses, failing to obtain the necessary endorsements to applicable workers' compensation policies and otherwise failing to satisfy applicable workers compensation insurance requirements, and failing to obtain directors' and officers' errors and omissions insurance coverage required by the Management Agreement (the "Specified Management Defaults"). The Management Default Letter gave Golf Club until 31 March 2016 to cure the Specified Management Defaults.

71. An accurate copy of the Management Default Letter is attached as <u>Exhibit 16</u>.

72. On 21 April 2016, the Management Company delivered a letter to the Golf Club (the "Management Termination Letter") notifying Golf Club that as a result of the continued defaults of various provisions of the Management Agreement, the Management Company has elected to terminate the Management Agreement.

73. An accurate copy of the Management Termination Letter is attached as <u>Exhibit 17</u>.

74. The Specified Management Defaults and the termination of the Management Agreement result in violation of <u>Section 5.9</u> of the Loan Agreement and an Event of Default under <u>Section 7.1(c)</u> of the Loan Agreement.

75. The Specified Management Defaults also represent actions (or inactions) of Debtors that might invalidate insurance carried on Bright's Creek and a direct violation of <u>Sections 5.14</u> and <u>6.17</u> of the Loan Agreement, resulting in an Event of Default under <u>Sections 7.1(g)</u> and <u>(i)</u> of the Loan Agreement.

14

76. Following additional events of default under the loan documents, as amended, Lantern sent a letter to Defendants on 28 March 2016 (the "Lantern Notice of Default"), noticing Defendants' default on their obligations under the loan documents, accelerating the Note, and exercising remedies.

77. An accurate copy of the Lantern Notice of Default is attached as <u>Exhibit 18</u>.

78. Pursuant to Section 5.20 of the Loan Agreement, prior to 10 July 2016, the Debtors are required to make Sale Proceeds Payments in an aggregate amount equal to or greater than $6,507,500, from gross revenues generated from the sale of residential lots at Bright's Creek equal to a minimum of $4,912,500, and gross revenues generated from the sale of club memberships at Bright's Creek equal to a minimum of $1,595,000. As of 22 April 2016, the Debtors have not made any Sale Proceeds Payments to Lantern.

79. Upon information and belief, the Debtors sold an unspecified number of club memberships, but during the period commencing with the effective date of the Loan Agreement through 1 April 2016, the Debtors did not make any Sale Proceeds Payments to Lantern, in violation of <u>Section 6.9(b)</u> of the Loan Agreement, resulting in an Event of Default under <u>Sections 7.1(i)</u> of the Loan Agreement.

80. As of the date of the Lantern Notice of Default, Defendants were jointly and severally indebted to Lantern, after offsetting reserved funds, in the approximate principal amount of $11,983,762.07, plus interest, damages, and attorneys' fees under Del. Code Ann. 10, § 3912.

**FIRST CLAIM FOR RELIEF**
**(Breach of the Loan Agreement and the Post-Closing Agreement—Debtors)**

81. Plaintiff realleges and incorporates by reference the allegations stated in the preceding numbered paragraphs.

15

82. The Loan Agreement, as amended by the First Amendment, the Second Amendment, and the Forbearance Agreement, is a valid and enforceable contract.

83. The Post-Closing Agreement is a valid and enforceable contract.

84. Debtors breached the Loan Agreement, as amended, and the Post-Closing Agreement for the reason stated in the preceding paragraphs.

85. As a proximate and foreseeable result of Debtors' breaches of the Loan Agreement, as amended, and the Post-Closing Agreement, Lantern has suffered damages in an amount to be proven at trial in excess of $75,000.

## SECOND CLAIM FOR RELIEF
**(Breach of the Security Agreement—Debtors)**

86. Plaintiff realleges and incorporates by reference the allegations stated in the preceding numbered paragraphs.

87. The Security Agreement is a valid and enforceable security agreement governed by the law of Delaware.

88. Debtors breached and are in default of the Security Agreement as follows:

   (a) under paragraph 6(a)(1) of the Security Agreement because Debtors are in default of other loan documents relating to the transaction, such default has continued past the cure period, if any, and Lantern has not waived their defaults;

   (b) under paragraph 6(a)(ii) by failing to turn over the Collateral to Lantern following its demand; and

   (c) in such other and further ways as may be proven at trial.

89. As a proximate and foreseeable result of Debtors' breach of the Security Agreement, Lantern has suffered damages in an amount to be proven at trial in excess of $75,000.

90. Lantern is entitled to an order requiring Debtors to deliver possession of the Collateral to Lantern for further disposition under the terms of the Security Agreement and applicable law.

### THIRD CLAIM FOR RELIEF
(Breach and Dishonor of the Note—Debtors)

91. Plaintiff realleges and incorporates by reference the allegations stated in the preceding numbered paragraphs.

92. The Note is a valid and enforceable promissory note and contract.

93. Debtors breached and dishonored the Note by failing to repay the Note in full after Lantern accelerated the Note on 28 March 2016.

94. As a proximate and foreseeable result of Debtors' breach of the Note, Lantern is entitled to recover the entire indebtedness plus accrued interest, fees, prepayment fees, protective advances, and attorneys' fees, net of offsets or recoveries from disposition of the Collateral and real estate encumbered by the Deed of Trust.

### FOURTH CLAIM FOR RELIEF
(Breach of the Guaranty—Guarantors)

95. Plaintiff realleges and incorporates by reference the allegations stated in the preceding numbered paragraphs.

96. The Guaranty is a valid and enforceable personal guaranty.

97. Guarantors breached the Guaranty when they failed and refused to repay the indebtedness evidenced by the Note following receipt of the Lantern Notice of Default.

98. As a proximate and foreseeable result of Guarantors' breach of the Guaranty, Lantern is entitled to recover from the Guarantors, jointly and severally with the Debtors, the entire indebtedness evidenced by the Note plus accrued interest, fees, prepayment fees,

protective advances, and attorneys' fees, net of offsets or recoveries from disposition of the Collateral and real estate encumbered by the Deed of Trust.

99. As a proximate and foreseeable result of Debtors' failure to complete the Project Construction, Lantern is entitled require that the Guarantors undertake to complete the Project Construction or to otherwise recover from the Guarantors, jointly and severally, any amounts incurred by Lantern in undertaking the completion of the Project Construction.

WHEREFORE, plaintiff Lantern Business Credit, LLC respectfully prays that the Court grant the following relief:

1. that the Court enter judgment against all defendants on the claims for relief alleged in this Complaint;

2. that plaintiff have and recover damages, jointly and severally, from all defendants for their dishonor of the Note, breach of the Loan Agreement, and breach of the Guaranties in an amount to be proven at trial in excess of $75,000;

3. that the Court order defendants to put plaintiff in possession of the Personal Property Collateral for disposition under the terms of the Security Agreement;

4. that the Court tax the costs of this action to defendants;

5. that the Court include in the judgment against Defendants Lantern's attorneys' fees according to the provisions of Del. Code Ann. 10, § 3912 (2016); and,

6. that the Court grant plaintiff such other and further relief as the Court deems just and proper.

This the 22nd day of April, 2016.

/s/Neale T. Johnson
Neale T. Johnson
N.C. State Bar No. 25590
neale.johnson@smithmoorelaw.com

/s/Manning A. Connors
Manning A. Connors
N.C. State Bar No. 21990
manning.connors@smithmoorelaw.com

*Attorneys for Plaintiff Lantern Business Credit, LLC*

OF COUNSEL:

SMITH MOORE LEATHERWOOD LLP
Post Office Box 21927
Greensboro, NC  27420
Telephone:     (336) 378-5319
Facsimile:     (336) 433-7442