THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
Civil Case No. 1:16-cv-107-MR

| | |
|---|---|
| LANTERN BUSINESS CREDIT, LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>BRIAN McMURRAY<br><br>Intervenor,<br><br>vs.<br><br>ALIANZA TRINITY DEVELOPMENT GROUP, LLC, a Florida limited liability company, ALIANZA TRINITY HOLDINGS, LLC, a Florida limited liability company, BRIGHT'S CREEK GOLF CLUB, LLC, a North Carolina limited liability company, PASQUALE GIORDANO, and OMAR BOTERO<br><br>Defendants. | COMPLAINT OF INTERVENOR BRIAN McMURRAY AGAINST DEFENDANTS ALIANZA TRINITY HOLDINGS, LLC, PASQUALE GIORDANO and OMAR BOTERO<br>(Jury Trial Demanded) |

**NOW COMES** Intervenor, Brian McMurray, complaining of Defendants Alianza Trinity Holdings, LLC, Pasquale Giordano and Omar Botero and alleges and states as follows:

### PARTIES, JURISDICTION AND VENUE

1. Intervenor Brian McMurray ("McMurray") is a citizen and resident of Moore County, North Carolina.

2. Defendant Pasquale Giordano ("Giordano") is, upon information and belief, a citizen and resident of the State of Florida. Giordano is, upon information and belief, a manager and 40% membership interest owner of Alianza Trinity Holdings, LLC.

3. Defendant Omar Botero ("Botero") is, upon information and belief, a citizen and resident of the State of Florida. Giordano is, upon information and belief, a manager and 60% membership interest owner of Alianza Trinity Holdings, LLC.

4. Defendant Alianza Trinity Holdings, LLC ("Alianza") is, upon information and belief, a Florida Limited Liability Company which does business in the State of North Carolina and owns real estate in Polk County, North Carolina. (Giordano, Botero and Alianza are collectively referred to in this Complaint as "Defendants")

5. The Court has personal jurisdiction over the Defendants because they have the required minimum contacts with North Carolina. The Defendants regularly conduct business in North Carolina and negotiated and executed the Note, Guaranty and Memorandum of Understanding in North Carolina, more particularly in the Western District of North Carolina. Further, the Defendants have admitted that this Court has personal jurisdiction over them.

6. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) as all parties domiciles are diverse for federal diversity purposes and the amount in controversy is in excess of $75,000. Further, Defendants have admitted that the Court has subject matter jurisdiction over similar matters with Plaintiff.

7. Venue in the Western District of North Carolina is proper as Defendants regularly conduct business in North Carolina and negotiated and executed the Note, Guaranty and Memorandum of Understanding in North Carolina and more particularly in Polk County, North Carolina. Further the Defendants have admitted that venue is proper in this Court for similar matters alleged by Plaintiff. Furthermore, upon information and belief, the assets of Defendant Alianza or a substantial amount of them are located in the Western District of North Carolina.

## FACTUAL ALLEGATIONS

8. On December 31, 2014, McMurray loaned to Alianza the principal amount of $250,000.00 pursuant to a Promissory Note a true and authentic copy of which is attached hereto as Exhibit 1 and incorporated herein by reference (the "Note").

9. Giordano and Botero provided personal guaranties for the payment of the Note (the "Guaranty"). A true and authentic copy of the Guaranty is attached hereto as Exhibit 2 and incorporated herein by reference.

10. The Note provided for, *inter alia*, the repayment of the principal and interest in the amount of 7.5% per annum by March 2, 2015 (the "Maturity Date"). Upon default of the Note interest was to be calculated at 18% per annum.

11. The Guaranty provided that, in addition to guarantying timely repayment of the Note, Giordano and Botero would cause Alianza to issue to McMurray a 1% ownership interest in Alianza for every week, or portion thereof, after ten days of maturity of the Note if the Note was not paid on the Maturity Date.

12. Alianza defaulted on the Note by failing to pay the Note by the Maturity Date. In fact, Alianza did not pay the Note until July 31, 2015.

13. After Alianza failed to timely pay the Note, McMurray made numerous demands for payment under the Note and Guaranty. The Parties entered into a memorandum of agreement dated June 16, 2015 regarding McMurray's rights in Alianza and collection amount due pursuant to the Note (the "Memorandum of Understanding"). A true and authentic copy of the Memorandum of Understanding is attached hereto as Exhibit 3 and incorporated herein by reference.

14. The Defendants agreed that as of June 16, 2015, McMurray's economic interest in Alianza was 15%. McMurray's economic interest in Alianza had increased to 22% as of July 31, 2015, the date the Note was paid.

15. The Defendants also agreed in the Memorandum of Understanding to terms for the payment to McMurray for McMurray's economic interest in Alianza.

16. The triggering events which required the Defendants to pay McMurray for the value of his economic interest in Alianza included the earliest of the following dates: (1) when additional equity is raised for Alianza; (2) when all or substantially all of the assets or ownership interest in Alianza are sold assigned or transferred; (3) the date that Alianza closes on its option to purchase real property in Polk County, North Carolina; (4) the date that Alianza sells all or materially all of its assets or stock in a manner that would materially change the ownership of Alianza, or; (5) March 2, 2018.

17. Pursuant to the Memorandum of Understanding, upon notice of an event triggering the obligation to pay McMurray his economic interest, the Parties are to agree on the fair market value of McMurray's economic interest. If the Parties fail to agree on the fair market value of McMurray's economic interest, then an independent appraiser would be engaged to provide an appraisal report for McMurray's economic interest in Alianza to be delivered before the closing of the triggering event.

18. Upon information and belief, a triggering event requiring payment of the fair market value of McMurray's economic interest in Alianza has either occurred or will be occurring on or about July 29, 2016.

19. The Defendants have notified McMurray that despite the fact that a triggering event may occur in the near future, they will not pay McMurray his economic interest nor engage an appraiser to determine McMurray's economic interest.

20. As a result, the Parties have failed to agree on the fair market value of McMurray's economic interest in Alianza and the Defendants have failed and refused to appoint an appraiser to determine the fair market value of McMurray's economic interest in Alianza. Defendants have repeatedly denied McMurray's rights to his economic interest in Alianza and have engaged in activities to hide or misrepresent the occurrence of a triggering event in an effort to avoid their obligations to McMurray.

21. Additionally, Defendants Giordano and Botero have failed and refuse to cause Alianza to issue to McMurray his economic interest in Alianza.

## CLAIMS FOR SPECIFIC PERFORMANCE AND BREACH OF CONTRACT

22. All previous paragraphs of this Complaint are realleged and incorporated by reference as if fully restated herein.

23. McMurray, Giordano, Botero and Alianza have a valid contract regarding the payment of McMurray's economic interest in Alianza.

24. The contract provides for the appointment of an appraiser to determine the fair market value of McMurray's economic interest in Alianza as the parties have failed to agree on the fair market value of McMurray's economic interest. The contract further provides that Defendants Giordano and Botero are to issue to McMurray his economic interest in Alianza in the amount of 22% of Alianza.

5

25. Defendants have breached their contract with McMurray by failing to appoint an appraiser to determine McMurray's economic interest and by failing to issue to McMurray his economic interest in Alianza. Defendants have also anticipatorily breached their contract by denying that McMurray is entitled to his economic interest in Alianza and informing McMurray they will not pay McMurray the fair market value in Alianza as agreed.

26. McMurray is entitled to a judgment and order requiring that Defendants specifically perform the terms of the contract by issuing the economic interest to McMurray and appoint an appraiser to determine the fair market value of McMurray's economic interest in Alianza.

27. If the court determines that specific performance is unavailable in this matter, which is specifically denied, then McMurray seeks compensatory damages as a direct result of the Defendants' breach of contract, in an amount in excess of $10,000,000.00.

**WHEREFORE**, McMurray prays unto the Court:

1. That a judgment be entered compelling the Defendants to specifically perform the contract between the Parties by appointing an appraiser to determine the fair market value of McMurray's economic interest in Alianza and compelling that such economic interest be paid upon the occurrence of a triggering event;

2. That, alternatively, McMurray be awarded compensatory damages in an amount in excess of $10,000,000.00 for Defendants breach of contract;

3. For a trial by jury;

4. That reasonable attorneys' fees be awarded to McMurray;

5. That the cost of court be paid by the Defendants;

6. For such other and further relief as the Court deems just and proper.

This the 28th day of July, 2016.

                                  VAN CAMP, MEACHAM & NEWMAN, PLLC
                                  Attorneys for the Intervenor McMurray

                                  By: /s/ James R. Van Camp_____
                                        James R. Van Camp
                                        NC State Bar No. 4467
                                        PO Box 1389
                                        Pinehurst, NC  28370
                                        (910) 295-2525

# EXHIBIT 1

THIS PROMISSORY NOTE (THIS "NOTE") HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT, APPLICABLE STATE SECURITIES LAWS, OR APPLICABLE LAWS OF ANY FOREIGN JURISDICTION. THIS NOTE HAS BEEN ACQUIRED FOR INVESTMENT AND NOT WITH A VIEW TO DISTRIBUTION OR RESALE, AND MAY NOT BE OFFERED, SOLD, PLEDGED, HYPOTHECATED, RENOUNCED OR OTHERWISE TRANSFERRED IN THE ABSENCE OF THE AVAILABILITY OF AN EXEMPTION FROM THE REGISTRATION PROVISIONS OF THE SECURITIES ACT AND APPLICABLE STATE SECURITIES LAWS.

## ALIANZA TRINITY HOLDINGS LLC

### PROMISSORY NOTE

$250,000.00　　　　　　　　　　　　　　　　　　　　　　　　December 31, 2014
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Mill Spring, NC

FOR VALUE RECEIVED, Alianza Trinity Holdings LLC, a Florida limited liability company (the "**Company**") promises to pay to Brian McMurray (the "**Holder**") with an address of 120 W. Monroe Avenue, Pinebluff, NC 28373-8333, or his registered assigns, in lawful money of the United States of America the principal sum of $250,000.00, or such lesser amount as shall equal the outstanding principal amount hereof, together with interest from the date of this Note on the unpaid principal balance at a rate equal to seven and one-half percent (7.50%) per annum, computed on the basis of the actual number of days elapsed and a year of 365 days. All unpaid principal, together with any accrued and unpaid interest and other amounts payable hereunder, shall be due and payable in full as of March 2, 2015 (the "**Maturity Date**"). In addition, all unpaid principal, together with any accrued and unpaid interest and other amounts payable hereunder, shall be due and payable immediately as of the date on which such amounts are declared due and payable by the Holder upon or after the occurrence of an Event of Default (as defined below). Upon the occurrence of an Event of Default, this Note will bear interest at a rate of eighteen percent (18.00%) per year.

The following is a statement of the rights of the Holder and the conditions to which this Note is subject, and to which the Holder, by the acceptance of this Note, agrees:

　　　　1.　　Definitions. As used in this Note, the following capitalized terms have the following meanings:

　　　　　　　　(a)　　"**Company**" includes the limited liability company initially executing this Note and any Person which shall succeed to or assume the obligations of the Company under this Note.

　　　　　　　　(b)　　"**Event of Default**" has the meaning given in Section 4 hereof.

　　　　　　　　(c)　　"**Holder**" shall mean the Person specified in the introductory paragraph of this Note or any Person who shall at the time be the registered holder of this Note.

HLG: 204568

(d) **"Obligations"** shall mean and include all loans, advances, debts, liabilities and obligations, howsoever arising, owed by the Company to the Holder of every kind and description (whether or not evidenced by any note or instrument and whether or not for the payment of money), now existing or hereafter arising under or pursuant to the terms of this Note, including, all interest, fees, charges, expenses, attorneys' fees and costs and accountants' fees and costs chargeable to and payable by the Company hereunder and thereunder, in each case, whether direct or indirect, absolute or contingent, due or to become due, and whether or not arising after the commencement of a proceeding under Title 11 of the United States Code (11 U. S. C. Section 101 *et seq.*), as amended from time to time (including post-petition interest) and whether or not allowed or allowable as a claim in any such proceeding.

(e) **"Person"** shall mean and include an individual, a partnership, a corporation (including a business trust), a joint stock company, a limited liability company, an unincorporated association, a joint venture or other entity or a governmental authority.

(f) **"Securities Act"** shall mean the Securities Act of 1933, as amended.

2. Interest. Accrued interest on this Note shall be payable at maturity.

3. Prepayment. Upon five days prior written notice to the Holder, the Company may prepay this Note in whole or in part; provided that any such prepayment will be applied first to the payment of expenses due under this Note, second to interest accrued on this Note and third, if the amount of prepayment exceeds the amount of all such expenses and accrued interest, to the payment of principal of this Note.

4. Events of Default. The occurrence of any of the following shall constitute an **"Event of Default"** under this Note:

(a) Failure to Pay. The Company shall fail to pay all principal and accrued but unpaid interest on the Maturity Date; or

(b) Voluntary Bankruptcy or Insolvency Proceedings. The Company shall: (i) apply for or consent to the appointment of a receiver, trustee, liquidator or custodian of itself or of all or a substantial part of its property; (ii) be unable, or admit in writing its inability, to pay its debts generally as they mature; (iii) make a general assignment for the benefit of its or any of its creditors; (iv) be dissolved or liquidated; (v) become insolvent (as such term may be defined or interpreted under any applicable statute); (vi) commence a voluntary case or other proceeding seeking liquidation, reorganization or other relief with respect to itself or its debts under any bankruptcy, insolvency or other similar law now or hereafter in effect or consent to any such relief or to the appointment of or taking possession of its property by any official in an involuntary case or other proceeding commenced against it; or (vii) take any action for the purpose of effecting any of the foregoing; or

(c) Involuntary Bankruptcy or Insolvency Proceedings. Proceedings for the appointment of a receiver, trustee, liquidator or custodian of the Company or of all or a substantial part of the property thereof, or an involuntary case or other proceedings seeking liquidation, reorganization or other relief with respect to the Company or the debts thereof under any bankruptcy, insolvency or other similar law now or hereafter in effect shall be commenced

and an order for relief entered or such proceeding shall not be dismissed or discharged within sixty (60) days of commencement.

5. <u>Rights of the Holder upon Default</u>. Upon the occurrence or existence of an Event of Default described in Section 4(a), and at any time thereafter during the continuance of such Event of Default, the Holder may, by written notice to the Company, declare all outstanding Obligations payable by the Company hereunder to be immediately due and payable without presentment, demand, protest or any other notice of any kind, all of which are hereby expressly waived. Upon the occurrence or existence of any Event of Default described in Sections 4(b) and 4(c), immediately and without notice, all outstanding Obligations payable by the Company hereunder shall automatically become immediately due and payable, without presentment, demand, protest or any other notice of any kind, all of which are hereby expressly waived. In addition to the foregoing remedies, upon the occurrence or existence of any Event of Default, the Holder may exercise any other right power or remedy permitted to it by law, either by suit in equity or by action at law, or both.

6. <u>Representations and Warranties of the Company</u>. The Company represents and warrants to the Holder that:

(a) <u>Due Organized, Qualification, etc</u>. The Company: (i) is a limited liability company duly organized, validly existing and in good standing under the laws of North Carolina; (ii) has the power and authority to own, lease and operate its properties and carry on its business as now conducted; and (iii) is duly qualified, licensed to do business and in good standing as a foreign corporation in each jurisdiction where the failure to be so qualified or licensed could reasonably be expected to have a material adverse effect on the assets, liabilities, condition (financial or otherwise) or business of the Company.

(b) <u>Authority</u>. The execution, delivery and performance by the Company of this Note and the consummation of the transactions contemplated hereby: (i) are within the power of the Company; and (ii) have been duly authorized by all necessary actions on the part of the Company.

(c) <u>Enforceability</u>. This Note has been, or will be, duly executed and delivered by the Company and constitutes, or will constitute, a legal, valid and binding obligation of the Company, enforceable against the Company in accordance with its terms, except as limited by bankruptcy, insolvency or other laws of general application relating to or affecting the enforcement of creditors' rights generally and general principles of equity.

7. <u>Security</u>. This Note is a general unsecured obligation of the Company.

8. <u>Waiver and Amendment</u>. Any provision of this Note may be amended, waived or modified upon the written consent of the Company and the Holder

9. <u>Assignment.</u> This Note and any rights hereunder may be assigned, conveyed or transferred, in whole or in part by the Holder. The rights and obligations of the Company and the Holder under this Note shall be binding upon and benefit their respective permitted successors, assigns, heirs, administrators and transferees.

10. <u>Notices</u>. All notices, requests, demands, consents, instructions or other communications required or permitted hereunder shall be in writing and faxed, mailed or delivered to each party at the respective addresses of the parties as set forth herein, or at such other address or facsimile number as any party may designate by giving ten (10) days' advance written notice to the other party. All such notices and communications will be deemed effectively given the earlier of: (i) when received; (ii) when delivered personally; (iii) one (1) business day after being delivered by facsimile (with receipt of appropriate confirmation); (iv) one (1) business day after being deposited with an overnight courier service of recognized standing; or (v) four (4) days after being deposited in the U.S. mail, first class with postage prepaid.

11. <u>Usury</u>. In the event any interest is paid on this Note which is deemed to be in excess of the then legal maximum rate, then that portion of the interest payment representing an amount in excess of the then legal maximum rate shall be deemed a payment of principal and applied against the principal of this Note.

12. <u>Waivers</u>. The Company hereby waives notice of default, presentment or demand for payment, protest or notice of nonpayment or dishonor and all other notices or demands relative to this instrument.

13. <u>Severability</u>. If one or more provisions of this Note are held to be unenforceable under applicable law, such provision(s) shall be excluded from this Note and the balance of the Note shall be interpreted as if such provision(s) were so excluded and shall be enforceable in accordance with its terms.

14. <u>Governing Law</u>. The provisions of this Note shall be governed by and construed in accordance with the laws of the State of North Carolina (without reference to conflict of law provisions).

[*Remainder of Page Intentionally Left Blank*]

IN WITNESS WHEREOF, the Company and the Holder have caused this Note to be issued as of the date first written above.

**ALIANZA TRINITY HOLDINGS LLC**

By: *Pasquale Giordano*
Name: PASQUALE GIORDANO
Title: C.O.O.

Address for Notices to the Company:

2222 - PALMER ROAD
MILL Spring, NC
28756

H: 451741
Case 1:16-cv-00107-MR-DLH   Document 44-1   Filed 07/28/16   Page 13 of 18

# EXHIBIT 2

# GUARANTY

This GUARANTY AGREEMENT is given as of December 31, 2104, by Pasquale Giordano and Omar Botero (collectively, **"Guarantors"**) for the benefit of Alianza Trinity Holdings LLC (**"Maker"**) which has executed a Promissory Note dated December 31, 2014 in the principal amount of $250,000.00 (**"Promissory Note"**), which is payable to Brian McMurray ("**Payee**"). As an inducement for Payee to accept the Promissory Note, each of the Guarantors hereby guarantees the performance of all obligations of Maker under the Promissory Note. Guarantors expressly waive presentment and demand for payment of any of the debts of Maker, protest and notice of dishonor or of default to such Guarantors or to any other party with respect to any of the debts or obligations of Maker or with respect to any security therefore, all other notices to which such Guarantors might otherwise be entitled, demand for payment under this Guaranty and the provisions of North Carolina General Statutes Section 26-7 or any similar statute. This is a guaranty of payment, and not of collection. The liability of Guarantors on this Guaranty shall be unconditional, subject only to the rights of Maker arising under the Promissory Note. Notwithstanding any contrary provisions of this Guaranty, the obligation and liability on the part of each Guarantor shall be in the nature of guaranty, and shall be payable immediately upon default by Maker under the Promissory Note without recourse first having been had by Payee against Maker. This Guaranty shall be governed by the laws of the State of North Carolina.

Guarantors further agree that if the amounts due to Payee are not paid with ten (10) days of when due, then they will cause Maker to issue to Payee a 1% ownership interest in Maker, with the same rights and preferences as the owners of Maker with the most senior rights, and shall continue to cause Maker to issue an additional 1% ownership interest in Maker for every week or portion thereof that amounts remain outstanding and due and payable to Payee. Guarantors agree to cause Maker to redeem such ownership interests of Payee, if issued, within 3 years of the date of issuance at the fair market value of such interests as agreed to by Holdings and Payee or as shall be determined by an independent appraiser mutually agreed to by Holdings and Payee and paid for by Holdings.

Guarantor: Pasquale Giordano (seal)
Print Name: _Pasquale Giordano_
Date: _1/2/2015_

Guarantor: Omar Botero (seal)
Print Name: _____
Date: _1-2-2015_

H&M: 72180.2

# EXHIBIT 3

June 16, 2015

Pasquale Giordano and Omar Botero

Re: Defaulted Promissory Note and Guaranty

Dear Pasquale and Omar:

    I am willing to resolve the issues around your defaulted Promissory Note and Guaranty on the following terms:

1. You acknowledge that I have a 15% economic interest in (although not a member of) Alianza Trinity Holdings LLC ("Alianza") in accordance with the Guaranty dated as of December 31, 2014 executed by each of you. You agree to pay me in cash or by certified check for the fair market value of this economic interest (without discount for minority interest or illiquidity) as provided herein. This payment will be made on (and the economic interest will be valued as of) the earlier of (a) when you raise additional equity for Alianza, (b) when all or substantially all of the assets or ownership interests in Alianza are sold, assigned or transferred (a "Sale"), (c) the date that Alianza or an affiliate closes on the exercise of the option to purchase the Hidden Springs property pursuant to that certain Real Property Option Agreement dated on or about the date hereof, (d) the date that Alianza sells all or materially all of its assets or stock, including via merger or joint partnership, in a manner that would materially change the ownership of Alianza, or (e) March 2, 2018.

2. My economic interest in Alianza will only be diluted in the same manner as membership interests in Alianza are diluted by equity investments in Alianza by third parties which invest in Alianza on arms-length terms. The fair market value of such interest shall be agreed to by Alianza and me or it shall be determined by Alianza's selection of one of following independent appraisers: *Cap Val, LLC, Enterprise Valuation Consulting or Forensic Strategic Solutions.*

3. You will provide 30 days' advance written notice to me of the closing of any proposed equity financing by Alianza and the terms of such financing or any proposed Sale and the terms of such proposed Sale. If we cannot agree to the fair market value of my economic interest in Alianza within five (5) business days of receipt of such notice, then we shall engage the independent appraiser to provide an appraisal report for such economic interest with such report to be delivered prior to the closing.

4. My economic interest will be paid at the closing of the equity financing or the Sale. You will notify the investor or buyer, as applicable, in writing of my economic interest prior to the closing.

5. The defaulted Promissory Note dated December 31, 2014 in the principal amount of $250,000, which was payable by Alianza to me on March 2, 2015 will be paid in full in cash or by certified check upon the earlier of (a) the closing this week by Alianza of the approximately $10 million loan, or (b) 5:00 p.m. Eastern Time on June 19, 2015. If the

Promissory Note is paid in full on or before June 26, 2015, the Economic Interest shall be capped at 15%. If it is not paid by such date, the Economic Interest shall continue to accrue pursuant to the Promissory Note and Guaranty.

6. Except as provided herein, I retain all my rights under the Promissory Note and Guaranty.

7. This Agreement shall not be assigned by Alianza without my prior written consent, which will not be unreasonably withheld, including assignment pursuant to a merger, stock sale, strategic transaction or joint partnership that would not constitute an assignment under law. This agreement is binding upon, and inures to the benefit of, the parties and their respective permitted successors and assigns.

Please sign below and this shall constitute our binding agreement governed by North Carolina law.

Sincerely,

Brian McMurray

Agreed to and accepted this 17 day of June, 2015

_Pasquale Giodano_
Pasquale Giodano, individually and on behalf of
Alianza Trinity Holdings LLC, and Alianza Trinity
Development Group LLC

WITNESS:
By: _Shaula P. Dinsmore_
Name _Shaula P. Dinsmore_

_Omar Botero_
Omar Botero, individually and on behalf of
Alianza Trinity Holdings LLC, and Alianza Trinity
Development Group LLC

WITNESS:
By: _Claudia Botero_
Name _CLAUDIA BOTERO_

Cc Fred D. Hutchison, Esquire